JOHN A. SCHAIBLE, Jr., AND ANNA V. SCHAIBLE, PROSE-CUTORS, v. BOARD OF ADJUSTMENT OF THE TOWN-SHIP OF MILLBURN, ALBERT F. DALY, BUILDING IN-SPECTOR OF THE TOWNSHIP OF MILLBURN, AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MILL-BURN IN THE COUNTY OF ESSEX, DEFENDANTS.

Argued May 8, 1946—Decided September 30, 1946.

474

Before CASE, CHIEF JUSTICE, and Justice HEHER.

For the prosecutors, *Ernest Brita* and *Harry Silverstein*.

For the defendants, *Reynier J. Wortendyke, Jr.*

For Hanford C. Davis et ux., et al., intervening property owners, *Whiting & Moore (Ira C. Moore)*.

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. The writ of *certiorari* brings up the zoning ordinance of the Township of Millburn and a decision of the Township Board of Adjustment refusing to recommend to the Township Committee that prosecutors be given a permit to construct a building for office and storage purposes on the premises 217-225 Millburn Avenue, rear, Plate 5, Block 55, Lots 11-17.

The land in question is a *cul-de-sac*. It is about 180 feet back from Millburn Avenue to which it has access by a passageway 34 feet in width. On the map it bounds on Wyoming Avenue, but it has no practical access to that thoroughfare. The road there is on a sharp ascent to meet the bridge over the main line tracks of the Delaware, Lackawanna and Western Railroad Company. At one end the land is eight feet, and at the other—a distance of 239 feet—it is twenty feet, below the sidewalk grade. Its entire northerly line (336 feet), bounds on the railroad right of way which has three main tracks and a siding. On the south it abuts (345 feet) the rear line of business buildings which face on Millburn Avenue and are variously occupied by a candy and paper store, a hairdressing establishment, a real estate office, a gas station,

a dry-cleaning shop and a store premises now or recently vacant; also the rear line of a dwelling house property. To the west is the strip of land above referred to, lane-like in its proportions, which gives the property its only practical street outlet. Still beyond, to the west, is a one story corrugated steel building with adjoining bins and shed where the prosecutors now conduct the business which they wish to move to the proposed new structure; also a one story frame and concrete-block building with garage adjoining, owned (as is the present site of prosecutors' business) and occupied by the Zwigard Construction Company whose office is in a small structure fronting on Millburn Avenue. There is also a building occupied as a real estate office fronting on Millburn Avenue adjoining the west line of the above mentioned lane or outlet. The foregoing are all of the structures and uses on a rectangular town block (including prosecutors' lands) bounded on the north by the Delaware, Lackawanna and Western Railroad Company (about 1,100 feet), on the south by Millburn Avenue (also about 1,100 feet), on the east by Wyoming Avenue (about 347 feet) and on the west by Beverly Road, a short street which runs northerly from Millburn Avenue for a distance of about 250 feet and comes to a dead end at the railroad tracks. On the far corner of Millburn Avenue and Beverly Road is a one story building housing an Atlantic & Pacific Super-Market, with parking facilities between the building and Beverly Road. Such is the setting of the applicants' lands and such is the immediate neighborhood of which it is a part.

To recapitulate the surroundings of the lands in question: on the north is the railroad, with an average run of 115 trains per day; on the east is an inaccessible ramp, a county road which carries considerable motor traffic; on the south are the rear lines of divers business properties; and on the west are buildings comparable in use but inferior in architectural design to the building which the prosecutors propose to erect. It may not be reasonably argued that the land constitutes a border area for the protection of an abutting residence zone. The tract is isolated by surrounding barriers. No objection to the proposed structure comes from the owners of the adja-

cent properties facing on Millburn Avenue or from the Zwigard Construction Company, or, of course, from the railroad company. There is objection from several owners of properties on Glen Avenue (a street which roughly parallels the railroad on the opposite side of the tracks) and whose lands at the rear bound on the railroad; and there is objection from some other owners or managers of property in the general neighborhood.

Prosecutors' business is that of wholesale dealers in lubricants that are received, held and delivered in sealed containers. The commodities come by freight, are temporarily stored, and when sold are delivered by truck. A railroad siding, now and for a long time past in existence and use, will bring the shipments, averaging about one carload a week and arriving, according to present schedule, between the hours of three and four-thirty in the afternoon. The proposed building is. of pleasing design and will be one story in height. It will contain no machinery except a lifting device to hoist the large drums. It will house the stock of lubricants, the business office and the delivery trucks. It is about 200 feet distant from the prosecutors' present site. There will be no processing or manufacturing.

The lands now owned by prosecutors were detached from the Millburn Avenue frontage and came into separate ownership on November 18th, 1926. The ordinance then in force zoned the land for business, but the permissible uses included the conducting of a wholesale business, together with such right of storage as is negatively conceded in the following language: "No building shall have more than fifty per centum of its floor area devoted to the storage of goods, and any storage shall only be in connection with a business located in the same building." The ordinance further authorized the maintenance of a garage or stable for business vehicles upon obtaining permission from the Township Committee. Such a business as is now proposed seems to have been within the reasonable purview of the ordinance in effect at the time the land was detached from the Millburn Avenue frontage.

On November 25th, 1936, the ordinance was amended to exclude wholesale business from the business zone and to pro-

vide that no merchandise should be carried or stored other than that intended to be sold at retail on the premises; and that provision shuts out the proposed use. Prosecutors acquired title to the property on January 6th, 1945, for the purpose of doing that which they now ask permission to do. They took with constructive knowledge of the ordinance restrictions as amended in 1936, but their predecessors in title who acquired the rear lands in 1926 did not so take. It may not be said that prosecutors, or any of their predecessors in title, acquired a tract of land and thereafter made such use of a part thereof as left the remainder unavailable for economic use under the then effective zoning ordinance. In April of 1945 the ordinance was further amended to convert much of the Millburn Avenue frontage in the near neighborhood from a "business" to a "residence" zoning.

It is prosecutors' contention that the zoning provisions enacted in November of 1936 so restrict the lands as to amount to a practical confiscation. Not so, say the defendants; the land may be used for a fire or police station, or a public building—suggestions which, considering the limitations of the site and the utter incapacity of prosecutors to make or initiate such uses, 'seem fantastic. Or, they say, if prosecutors' property and the Zwigard property and the business properties and all the rest could be acquired and consolidated into one ownership and control, this or that could be done—a proposal that is at once canceled by its own "if." They say, further, that it is possible to use prosecutors' lands for a garden apartment development. That may be possible; but having in mind the many adverse elements, we think that the suggestion is not practicable, and the witness who advanced the idea appeared to lack confidence in it.

As things now are, prosecutors are deprived of any practical economic use of their property—an unnecessary hardship because the deprivation does not bring to other properties a commensurate advantage. It does not necessarily follow that the ordinance is, for that reason, void. Provision is made for such a specific case by *R. S.* 40:55–39d, wherein the Board of Adjustment is given the authority to recommend a variance which complies with the statutory standard. That

authority is discretionary, but the Board sits in *quasi*-judicial capacity and its acts or omissions are subject to review when they so violate the demands of right and justice as to constitute an abuse of discretion. *Brandon* v. *Montclair,* 124 *N. J. L.* 135; *affirmed,* 125 *Id.* 367. We think that the moving of prosecutors' business a distance of 200 feet to a structure built in accordance with the submitted plans and to be used as forecasted by the proofs will not be contrary to the public interest and will not seriously impair the pleasurable and profitable use of the neighborhood residence properties; that, on the contrary, owing to the special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and that the spirit of the ordinance will be observed and substantial justice done by allowing the variance.

The defendant municipality presents five points in opposition. We shall mention them *seriatim,* with our comments thereon:

(1) The prosecutors have invoked the procedure of the ordinance and therefore may not attack the ordinance.—Our disposition of the issue makes unnecessary a consideration of this point.

(2) Prosecutors are estopped because they bought subject to the restrictions of the ordinance.—The pertinent ordinance provision was adopted November 25th, 1936. The separation of title of the lands in question from the presently improved lands facing on Millburn Avenue took place prior to that time, namely, November 18th, 1926.

(3) The prosecutors have failed to sustain their burden of showing that the denial of the application constituted an abuse of discretion or was arbitrary or capricious.—For the reasons stated above we find *contra.*

(4) The propriety of the Board's action may not be tested by evidence not before it.—The Board conducted a hearing at which the salient and controlling facts were demonstrated. Prosecutors appeared with their attorney, submitted exhibits, and produced witnesses, lay and professional, who were examined and cross-examined; opponents, including a real estate expert, likewise appeared, made their statements and were

questioned by members of the Board and by prosecutors' attorney; the attorney now appearing for the intervenors was present in opposition, was heard at length and made no objection to the procedure; the Board resolved that it had heard the witnesses and had considered fully the character of the neighborhood and the possible uses to which the property might be put; and the full proceeding, apparently transcribed from a complete stenographic record, is before us. The witnesses were not sworn but here, as in other judicial proceedings, there may be a waiver of the administration of the oath, *Amon* v. *Rahway,* 117 *N. J. L.* 589, 592; *Wilson* v. *Union Township,* 123 *Id.* 474, 477; *Cady* v. *Norton (Mass.),* 14 *Pick.* 236; *Bassett* v. *Mechanics Bank of New Haven (Conn.),* 166 *Atl. Rep.* 385; *Slauter* v. *Whitelock,* 12 *Ind.* 338; *State of Missouri* v. *Hope,* 8 *L. R. A.* 608; *People* v. *McAdoo,* 77 *N. E. Rep.* 260, and we consider that the parties and the tribunal waived that formality. The witnesses could have been and doubtless would have been sworn if the Board had provided the facilities and suggested that course; the Board, and not the witnesses or the prosecutors, was in control of the hearing. We also find that the facts produced before the Board, supplemented by the Board's admitted knowledge of the neighborhood conditions, are sufficient to support our conclusions.

(5) The evidence adduced by depositions fails to show an abuse of discretion by the defendant Board.—We find otherwise; but, and more important, the case as it stood before the Board called for affirmative action.

We have, in addition, carefully examined the brief submitted on behalf of protesting property owners and find no matter which requires comment other than as above stated.

It was the duty of the Board of Adjustment, under the circumstances of the case, to recommend the requested variance. The refusal was arbitrary and capricious. It will be set aside, with costs.