13 N.J. Super. 89 (1951)
80 A.2d 258
SUN OIL COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
CITY OF CLIFTON, A MUNICIPAL CORPORATION OF NEW JERSEY, WALTER E. ALBRECHT, BUILDING INSPECTOR OF THE CITY OF CLIFTON, AND WILLIAM A. MILLER, CITY CLERK OF THE CITY OF CLIFTON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 2, 1951.
*91 Messrs. Collester and Johnson, attorneys for plaintiff.
Mr. John G. Dluhy, attorney for defendants.
DAVIDSON, J.S.C.
This is an action in lieu of prerogative writ, plaintiff seeking to set aside a resolution of the governing body of the City of Clifton which denied it a zoning variance recommended by the board of adjustment. As collateral relief, it seeks the issuance of a building permit for a gasoline station and renewal permits for the maintenance and operation of gasoline pumps.
There is no substantial dispute of fact. Briefly, plaintiff, on November 20, 1946, entered into an agreement to purchase property at the northwest corner of Clifton and Getty Avenues, Clifton, zoned as Business "B", which contract set forth plaintiff's intention to use said premises as a gasoline service and filling station and was expressly conditioned upon plaintiff's ability to secure all necessary permits and licenses to erect, install, maintain and operate said station. Pursuant to the provisions of an ordinance (No. 2040), which prohibited motor vehicle service stations in business districts without permission from the municipal council, plaintiff, on February 5, 1947, made such application to said council; the same ordinance required approval by the chiefs of the fire and police departments, which certificates plaintiff obtained.
On February 11, 1947, the ordinance (No. 2040) was invalidated by the Court of Errors and Appeals, so there was no zoning prohibition in force and no reason for plaintiff to do more than submit its application for a building permit direct to the building inspector, accompanied by the necessary tank and pump permits.
*92 On February 18, 1947, the municipal council, after public hearing, adopted a resolution approving plaintiff's application "for permission to install three 2,000 gallon tanks and four pumps, for a drive-in gasoline station on the premises known as the northwest corner of Clifton and Getty Avenues, Clifton, New Jersey (Business Zone)" (such permission being required under licensing ordinance No. 151), and on February 19, 1947, plaintiff was issued three permits for the installation of public gasoline tanks and four permits for the operation and maintenance of gasoline pumps, paying the fees therefor, all of which were annually renewed until April 1, 1950, when the clerk refused further renewals pending termination of litigation.
On February 26, 1947, plaintiff received permission to break the curb in front of the premises and on the same day applied to the building inspector for a building permit, submitting plot and building plans, but the building plan was rejected for the reason that it did not comply with the provisions of the building code, in that the proposed walls were but eight inches in thickness, whereas the code required 12-inch walls. The inspector testified that in view of the council approval, he would have issued the permit as a matter of course if the building plan had conformed to the code and no federal restrictions were effective. The inspector issued a certificate approving the plot plan with regard to curb cuts, driveways, building location and tanks, but expressly set forth that "no actual building permit will be issued until plans have been examined by me and are made to coincide in every respect to our building laws and ordinances and a Civilian Production Authority permit is submitted for said building."
Construing this qualified certificate of plot plan approval as a building permit, plaintiff took title to the premises on March 10, 1947, and the following month cut curbs and installed tanks. Up to this point, there was no valid zoning prohibition against gasoline stations in business zones, but on March 6, 1947, the municipal council amended the zoning ordinance and prohibited motor vehicle service stations in said *93 zones  it follows that no building permit for such use could thereafter issue without the grant of a variance by the governing body after appeal to the board of adjustment under the ordinance.
A municipal ordinance (No. 2390) was passed October 21, 1947, prohibiting the grant of permits for a gas tank or pump unless there has been a full compliance with all ordinances, and a new zoning ordinance covering the entire municipality, which also prohibited gasoline service stations in business zones, was passed on January 3, 1950.
Plaintiff never sought permission for construction from the Civilian Production Authority and, although the federal regulations restricting civilian construction expired on June 1, 1947, except for the renewal of its pump permits, took no further action until April, 1949, when it again applied for a building permit and presented plans. The application was refused because the building plans did not comply with the building code. Corrections and suggested changes were made in the plans and the application was again submitted to the building inspector on August 12, 1949, when a permit was denied by reason of zone variance.
On February 23, 1950, plaintiff applied to the zoning board of adjustment which, after public hearing, recommended to the governing body that plaintiff's request for a variance to permit the erection of a gasoline service station be granted, but the municipal council, by resolution adopted July 6, 1950, denied the variance.
Plaintiff contends that denial of the variance by the municipal council after recommendation thereof by the board of adjustment was arbitrary, unreasonable and capricious. This contention is primarily based upon its construction of the building inspector's certificate of qualified approval (of the plot plan only) as a formal building permit, although it also contemplates the original approval of the council for the issuance of tank and pump permits, its expenditures relying upon the building inspector's qualified certificate, including fees for renewal pump permits, and the grant of a variance *94 to Atlantic Refining Company in December, 1950, under substantially similar circumstances.
This is not a situation where one in possession of a building permit is unable to proceed without approval of a governmental agency or until such agency's restrictions have been removed  the fact is that plaintiff never had a building permit at any time, nor was it ever entitled to receive one, and the qualified certificate of approval of the plot plan issued by the building inspector cannot be construed as such, for there was no compliance with the building code until April 12, 1949, the use of the property as a gas station having been prohibited by ordinance since May 6, 1947. Plaintiff voluntarily chose, upon its own responsibility, to construe and rely upon the approval of the plot plan as a building permit and made expenditures, including pump permit renewal fees. The grant of the variance to Atlantic Refining Company does not sustain plaintiff's contention  the respective properties are not comparable, for the conditions are dissimilar; they are situated on entirely different streets and are more than a half-mile apart.
The approval of the council on February 18, 1947, granting permission for the installation of tanks and pumps on plaintiff's property was, in my opinion, effective only as to the issuance of tank and pump permits under the licensing ordinance  motor vehicle service stations in business zones were not then prohibited by ordinance and the council could not usurp the office of the building inspector.
R.S. 40:55-39 (d), as amended, empowers the board of adjustment to "recommend in particular cases and for special reasons to the governing body of the municipality the granting of a variance to allow a structure or use in a district restricted against such structure or use. Whereupon the governing body * * * may, by resolution, approve or disapprove such recommendation." The only statutory restriction upon the governing body is also contained in the foregoing sub-section and provides that "no relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially *95 impair the intent and purpose of the zone plan and zoning ordinance."
The resolution of the board of adjustment is merely recommendatory and the courts will not interfere in the absence of fraud or abuse of discretion. Pennington Courts, Inc. v. Board of Adjustment of the City of Passaic, 7 N.J. Misc. 1037 (Sup. Ct. 1929); Aschenbach v. Plainfield, 121 N.J.L. 598 (Sup. Ct. 1939); Schaible v. Board of Adjustment of Millburn Twp., 134 N.J.L. 473 (Sup. Ct. 1946).
The statute provides for an independent determination by the governing body. It does not follow that once the board of adjustment has recommended, the governing body must, pro forma, approve. Verniero v. Board of Commissioners of the City of Passaic, 134 N.J.L. 71 (Sup. Ct. 1946).
Plaintiff, not having a building permit, was bound by the subsequent enactment of the zoning ordinance which controlled its property use. Sun Oil Company v. Bradley Beach, 136 N.J.L. 307 (Sup. Ct. 1947); Socony-Vacuum Oil Co., Inc. v. Mt. Holly Twp., 135 N.J.L. 112 (Sup. Ct. 1947); Eastern Boulevard Corp. v. Willaredt, 123 N.J.L. 269 (E. & A. 1939).
Apparently plaintiff received no notice of the council meeting at which the variance was denied, but no provision of the statute which requires such notice or public hearing has been indicated and the record being barren of what then transpired, there is no basis for a substitution of the court's judgment for that of the governing body.
It seems unnecessary to consider defendants' contentions that plaintiff was guilty of laches by reason of protracted delay in the submission of building plans which conformed to the code, and having accepted prior denials, had waived any rights which might have existed prior to its final application to the building inspector on August 12, 1949.
Judgment, accordingly, will be for the defendants.