SERIO ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 64, October Term, 1955.]

546

*Decided January 9, 1956.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*James O. Scrimger,* with whom was *Morris Mazelis* on the brief, for the appellants.

*Marvin E. Rothbloom* and *Edward L. Putzel,* with whom were *Thomas N. Biddison, City Solicitor of Baltimore,* and *Francis J. Valle, Assistant City Solicitor,* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The appeal is from an order of the Baltimore City Court affirming the action of the Board of Municipal and Zoning Appeals, which had refused to permit a gasoline filling station in a residential use district by the exercise of the powers given it to extend the boundaries of a commercial use district one hundred feet into an adjoining residential use district. It is said that the Board and the Court erred because a 1941 ordinance that had rezoned the one hundred feet from commercial to residential was arbitrary, unreasonable and invalid in that it deprived the appellants of the most suitable and appropriate use of the property, in violation of rights assured them by the constitutions of Maryland and the United States, and because the refusal to permit the one hundred feet to be used for commercial use amounts to an arbitrary and illegal deprivation of reasonable use of the property.

Members of the Serio family owned a lot at the northwest corner of Cold Spring Lane and Dolfield Ave. in Baltimore. When zoning first took effect in Baltimore in 1931, the lot, together with the surrounding area, was zoned second commercial. At that time most of the land on Dolfield Ave. north of Cold Spring Lane was vacant and portions were included in the commercial use zone on account of the proximity of the Western Maryland Railroad some 750 feet to the east. The expectations of the zoners proved to be faulty as far as Dolfield Avenue was concerned, a number of dwellings being built there between 1931 and 1941. The evidence is that the actual use and the trend were definitely residential, rather than commercial, north of Cold Spring Lane. An exception was a part of the Serio lot—100 feet on Dolfield Ave. and 100 feet on Cold Spring Lane— that they had sold to an oil company, which used it for a filling station. In recognition of the residential trend, the City Council in 1941 passed an ordinance changing from second commercial to residential both sides of Dolfield Ave. as part of an area that ran some 600 feet east

and west and 350 feet north and south—from the Western Maryland Railroad on the east to Callaway Ave. on the west, and from an extension of the north line of the filling station for some 350 feet to the north. Thus the Serios were left with an L or cleaver-shaped lot extending around the filling station, adjoining it to the west on Cold Spring Lane and to the north on Dolfield Ave. The western portion of this remaining lot ran north from a 75 foot frontage on Cold Spring Lane to a rear width of some 55 feet, along the west boundary of the filling station lot for 100 feet, and was and is zoned second commercial. The northern line of this portion of the lot is part of the southern line of that portion of the lot that fronts on Dolfield Ave. for some 102 feet, with a depth of roughly 155 feet. The portion of the lot fronting on Dolfield Ave. and running west 155 feet, was included in the area rezoned residential in 1941 and is presently so zoned. From Cold Spring Lane to Garrison Boulevard, a distance of some five blocks, on both sides of Dolfield Ave. residences have been built and there are no commercial establishments in that five block area, with the exception of the filling station to which we have referred and another such station on the northeast corner of Dolfield Ave. and Cold Spring Lane. In fact, there are stations on each of the four corners of that intersection. From Cold Spring Lane south on Dolfield Ave. are a number of stores for a block or so—a small shopping center—and there are some commercial and industrial uses to the east, on Cold Spring Lane and along the railroad.

Joseph F. Serio and Rose Serio, the appellants, purchased the lot in question from the estate of their mother in 1946. In 1954, application was made to erect a gasoline filling station on the lot. The plans and the testimony show that the Cold Spring Lane strip was to be used merely as a driveway and that 95% of the station, including the pump islands, pumps, tanks and flood lights, would be on the Dolfield Ave. portion; that is, the portion now zoned residential. At the hearing

before the Board, each side produced one real estate expert to show the character and potential uses of the land. For the appellants there was testimony that the land was not adapted to residential use and that its only reasonable use was commercial because it would be a tremendous hardship to attempt to sell houses on land where you are not able to get "the maximum benefit" from financing and savings institutions. There was testimony for the owners that they had attempted to sell the land for two years for residential use and were unable to do so. The protestants, the appellees, introduced testimony of a builder who had contemplated building five houses on the land on Dolfield Ave. between the filling station and the first house to the north. There was introduced a plat he had caused to be prepared, showing the proposed locations of the houses, with the necessary sideyards required by the zoning law. The builder said that he had gotten tentative approval from the planning commission and from the Veterans Administration and had been assured by the man who financed his operations that he would go along with a construction loan. He testified also that he had sought advice from the real estate men in the neighborhood who had agreed that the houses could be built and sold at a profit. When he was asked whether the land was suitable for residential use, he said that he thought it definitely was suitable for dwellings of the proper type and that they could be financed and sold profitably, although the house next to the filling station would be worth a little less. He did not consummate his plans because he took on another, and larger, building operation that presented itself and occupied his time and efforts. This builder had bought from the Serios land on Callaway Ave. just west of Dolfield Ave. and had built houses on it in 1954. It was shown that the 102 foot frontage on Dolfield Ave., on which he had intended to build, was graded to street level and that there were no physical or legal impediments to the construction of houses.

At the appeal in the City Court, the appellants produced the same real estate man who had testified before the Board and his testimony was fortified by that of another realtor, who said that the land was best suited for commercial purposes and not suitable for residential purposes because of the difficulty in obtaining financing. The testimony on this occasion was that the land could be used for residential purposes "at a loss—not a profit". Apparently, this was intended to mean that the loss would be in relation to the maximum financial return that could be derived from the land. The testimony before the Board for the protestants was repeated in Court, and there was also testimony as to the character of the neighborhood north of Cold Spring Lane, including that of the man who lives in the house 100 feet from the filling station, who said that eight years before he had bought and moved into the house before it was finished, even though the four filling stations were there at the time.

The Board decided that since a filling station is excluded from a residential use district, the permit could be granted only if there were compelling reason to make an exception, and found no such reason, as well as that the part of the filling station which would be in the commercial use district would adversely affect the residential properties in the neighborhood and interfere with the comfort and welfare of the home owners nearby. The Court, on appeal, affirmed the Board on the ground that there was substantial evidence in the record to support the actions and findings of the Board.

The appellants do not challenge the validity of the 1941 rezoning ordinance in its entirety, nor could they well do so. Rezoning is justified when there was error in the original zoning or when the character of a neighborhood has changed to such an extent that reclassification properly ought to be made. A court will not substitute its judgment as to the wisdom or soundness of the action taken by the legislative or administrative body but decides only whether that action is illegal, arbitrary or discriminatory. If the question de-

cided is fairly debatable, the decision must be upheld and "only where there is no room for reasonable debate, or where the record is devoid of supporting facts" will a court declare legislative or administrative action invalid. *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 562; *Wakefield v. Kraft,* 202 Md. 136; *Kracke v. Weinberg,* 197 Md. 339. Particularly would that be true where the action is not complained of until thirteen years after it took place. The record shows that either of the two necessary grounds could have been relied on by the City Council. It would seem that the original zoning was clearly erroneous as to Dolfield Ave., and that this had been shown by the change in the character of the neighborhood from vacant land to residential, rather than from vacant land to commercial, in the ten years which followed the original zoning. If the appellants are to succeed on the basis of the invalidity of the 1941 ordinance, they must show that, as applied to the Dolfield Ave. lot, the effect of the ordinance is to deprive them of any reasonable use of the land. *City of Baltimore v. Cohn,* 204 Md. 523, 530. That the value of the land for sale or lease is less by reason of the restrictions to residential use is not controlling. *Gleason v. Keswick Improvement Ass'n,* 197 Md. 46, 50; *Kracke v. Weinberg,* 197 Md. 339, *supra; Ellicott v. City of Baltimore,* 180 Md. 176; *Walker v. Board of County Commissioners,* 208 Md. 72, 94-95, 116 A. 2d 393, 405. In the last case cited, the Court adopted the language of *City of Baltimore v. Cohn, supra:* " 'A zoning restriction may be regarded as arbitrary and unreasonable as to a property owner who is unable to use his property for any of the permitted purposes and is therefore deprived of all beneficial use thereof. * * * To sustain an attack upon the validity of the ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions upon his property preclude its use for any purpose to which it is reasonably adapted, * * *'."

There was substantial evidence before the Board clearly permitting a finding that the appellants' property on

Dolfield Ave. could be used for the erection of resi-
dences, without unreasonable physical or economic im-
pediment. This being so, the claim of the appellants as
to the unconstitutional and invalid impingement of the
ordinance on their property must fail.

We turn then to the second ground of the complaint,
namely, that the refusal of the Board to allow a vari-
ance under the elasticity provisions of the Baltimore City
zoning ordinance is arbitrary and unreasonable. Under
the rules clearly laid down by the cases, we find that it
is not. Filling stations are excluded from residential
use districts by Sections 9 and 10 of the ordinance.
Under Sec. 37.2, the Board may allow a filling station
in a use district only where it is permitted in such dis-
tricts by the use regulations. To escape this dilemma,
the appellants urge the application of Sec. 14 of the ordi-
nance which provides: "Use District Special Exceptions.
The Board of Municipal and Zoning Appeals may, after
public notice and hearing, in its discretion, in a specific
case, and subject to the provisions, restrictions, guides
and standards set forth in Section 35 (j), permit, where
otherwise excluded or limited—* * * (d) within one
hundred feet of a boundary line between two use dis-
tricts, any use permitted in that one of such use districts
which has the lower classification provided that the lot
on which such use is permitted shall be contiguous to
such zone of lower classification, and provided further
that such one hundred foot measurement shall not extend
across a street or alley and that there shall be no further
extension thereafter." As pointed out in *Montgomery
County v. Merlands Club,* 202 Md. 279, 287: "It has
never been held since *Sugar v. North Baltimore Meth-
odist Protestant Church,* 164 Md. 487, 165 A. 703, that
the provisions for exceptions in the Baltimore City zon-
ing ordinance are valid although several times we have
assumed the validity of those provisions and held that
the facts did not warrant the exception." Actually, the
relief sought by the appellants under Sec. 14 (d) prop-
erly is to be classified as a variance rather than an

exception, as those terms are defined in the decisions referred to in the *Merlands Club* case. This being so, as the ordinance itself sets forth in Sec. 36 (c), the Board shall grant the variance only where there are "practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any of the provisions of this Article." The cases lay down a strict test. In *Gleason v. Keswick Improvement Ass'n,* 197 Md. 46, 50, *supra,* the Board had granted a right to erect a store in a residential use district by virtue of the 100 foot extension provision. The Baltimore City Court reversed, and the Court of Appeals affirmed that action. It was said: "It may be noted that a special exception will never be granted to gratify a convenience, and not only must the necessity be urgent, but the facts in a given case must be so extraordinary as to persuade us to withdraw the case from application of the accepted rule. * * * The burden of proof is upon the applicant, and it must be shown that the hardship affects particular premises and is not common to other property in the neighborhood; the fact that variance would make property more profitable is not sufficient ground to justify granting of variance." The Court pointed out that at the time the property was purchased it was used for residential purposes and adopted the language of *Rathkopf on Law of Zoning and Planning,* page 262, as follows: " 'Where a person purchases property with the intention to apply to the board of appeals for a variance from the restrictions imposed by the ordinance he cannot contend that such restrictions cause him such a peculiar hardship that entitles him to the special privileges which he seeks." For the purposes of the decision, the constitutionality of Sec. 14 is assumed. See also *Easter v. City of Baltimore,* 195 Md. 395, 400; *Heath v. Mayor & City Council,* 187 Md. 296; *Heath v. Mayor & City Council,* 190 Md. 478, 483. In the case last cited, the Court said: "The Board of Zoning Appeals, in considering an application for an exception to the general rule, should carefully analyze the evidence before it to determine if the need

for the exception is of such urgency that injustice will result if the exception to the rule is not applied. If by applying the general rule a reasonable use of land results, the exception to the rule should not apply. The need to justify the exception must be real and substantial. If an exception to the general rule is permitted for reasons that are not urgent and substantial, but for mere convenience, then a provision of the ordinance for an exception might cease to be such and, in practice, become the rule. A broad interpretation of an exception could lead to an unequal administration of the ordinance and result in discrimination. For these reasons a provision of the ordinance for an exception to the general rule should be strictly construed."

We have previously noted in the discussion as to unconstitutionality that there was substantial evidence which permitted the finding that the land could be used for residences. The holdings of the *Gleason* and *Heath* cases, explained in the language quoted above, make this fact a full answer to the claim of the appellants that the action of the Board was arbitrary and unlawful. Since the Board was fully justified in finding that the variance was not warranted, there is no need to consider the further reasons it gave for its decision. Applicable here is the general well established principle that if the evidence before the Board substantially supports its conclusions, its findings will not be disturbed on appeal. *Hoffman v. Mayor & City Council*, 187 Md. 593, 601. The action of the Baltimore City Court in affirming the Board was correct.

*Order affirmed, with costs.*