MARINO ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 79, September Term, 1957.]

208

210

*Decided December 30, 1957.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Donald N. Rothman* and *Robert Hammerman,* with whom were *Gordon, Feinblatt & Rothman* and *David P. Gordon* on the brief, for appellants.

*Henry Vogt* for appellees, William J. Huber et al., Intervenors.

*Shirley B. Jones, Assistant City Solicitor of Baltimore,* for appellee, Mayor and City Council of Baltimore.

*Thomas N. Biddison, City Solicitor of Baltimore,* and *Hugo A. Ricciuti, Deputy City Solicitor,* were on the brief for appellees.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court affirming the action of the Board of Municipal and Zoning Appeals, (the Board), denying a permit to construct a one-story store building and adjacent parking area on the unimproved lot of land owned by Frank C. Marino and Bernardine Marino, his wife, and the Marimar Company, Inc., (the Marinos), on the north side of Belvedere Avenue near the intersection of said Avenue with York Road, generally known as 522 East Belvedere Avenue.

The property is situated in a residential use district and has been so classified since the passage of the initial zoning act in 1931. Only semi-detached or single dwellings are permitted but none has been constructed by the Marinos or previous owners. The plat filed with the record shows a first commercial use district on both sides of York Road to the

north and south of Belvedere Avenue, an area which has been zoned commercial since the original zoning ordinance in 1931. The area between the easternmost boundary of the commercial district and the property for which an exception is sought, also owned by the Marinos, is zoned for residential use, but is now used for commercial purposes under a prior permit approved by the Board. The area immediately to the north of the property in question, above a slope, variously estimated to be ten to thirty feet high, is zoned and used for residential purposes. The sylvan area to the east, owned by the City, is also zoned residential, although a part of it may be used in the future as a portion of the proposed Northern Parkway Extension. Directly across the avenue from the Marino property there is a large parking lot, formerly zoned residential, but now used commercially. A department store is situated on the southeast corner of York Road and Belvedere Avenue, but it is within the first commercial use district referred to. Other nonresidential uses have, by way of exceptions, invaded the residential use district. However, the major part of the originally zoned residential district still remains zoned and is used for residences.

On October 5, 1953, an ordinance was introduced in the City Council of Baltimore City to rezone the property in question from residential to first commercial. On October 30, 1953, the Board approved and recommended passage of the proposed ordinance stating that "it is not suitable for residential development". The Planning Commission of Baltimore City suggested an amendment of the proposed ordinance to the effect that the eastern portion of the property should be restricted to a parking area for the building proposed to be erected on the western portion. The suggestion was acceptable to the Marinos, but on June 1, 1954, the ordinance as amended was rejected by the City Council.

At the hearing before the Board evidence was produced to the effect that the property was unsuitable for residential use; that to use it for that purpose would be wasteful, imprudent, economically unsound, and impossible to finance; and that the property was best suited for commercial use. There was also testimony that the value of the property for

commercial use was ten times that for residential use, and that such use would not affect the value of neighboring properties. On the contrary there was evidence, some of it on cross examination, to the effect that the property was suitable for residential purposes; that houses costing from $12,000 to $15,000, if built, could be readily sold; and a banker testified that his savings and loan association would "entertain" an application for a loan for residential development of the property. The protestants, who testified, objected to any further encroachment by commercial interests because it would tend to depreciate the value of their properties. One witness, a real estate appraiser and broker, attempted to testify that the present use of the property as a "dump" and a "parking lot" created a health as well as a safety problem, but his testimony had little probative value. Because vacant lots scared him, another real estate developer, who had seen the property used as a dump inhabited by mice and rats and perhaps a few snakes, and used as a playground for children, thought the residential restriction had created a health, safety and morals hazard, but he was not an expert in either field.

There was some testimony, pro and con, before the Board as to the effect of traffic congestion in the area. In court, the director of traffic, who had made several traffic surveys of the cross-streets area of York Road and Belvedere Avenue, testified that it was a difficult intersection; that it was "strategic", and was considered among the "heaviest traveled corners" in the City—a count on September 1, 1956, showed that 47,988 vehicles passed through the area in a twenty-four hour period, 18,782 of which were going "to the east of York Road". Over a period of four years there were fifty-seven accidents at the intersection. He further testified that the parking lot across the avenue had created traffic congestion and that another on the Marino property would make it "doubly worse", and that the congestion is already great and the street arrangements are not such as permit a present solution of the problem. The traffic director was also of the opinion that the development of a large department store and parking lot in the area was a serious error traffic-wise which ought not to be repeated.

The authority of the Board to make an exception under the Enabling Act, [Code, Cum. Supp. (1957), Art. 66B, sec. 7 (g) (2), (3)], and Section 36 (b) and (c), [formerly 33 (b) and (c)], of the Baltimore City Zoning Ordinance, (the ordinance), is not disputed. Furthermore, the City and the intervenors admit that in this case the proper tribunal to hear and determine the appeal from the Board was the Baltimore City Court.

Section 7 (g) (3), *supra,* provides that the Board shall have the power, among others:

> "To authorize upon appeal in specific cases such variance from the terms of the ordinance as is necessary to avoid arbitrariness and so that the spirit of the ordinance shall be observed and substantial justice done."

The ordinance provides that the Board shall have power: (i), by Section 35 (g) 2, to "hear and decide special exceptions * * *"; and (ii), by Section 35 (g) 3, the same identical power as that granted by Section 7 (g) (3), *supra,* of the enabling act. Section 36 (b) and (c), *supra,* of the ordinance, with which we are primarily concerned, provide, in part, authority to:

> "(b). Grant a permit where the use or change of use of land, * * * proposed to be used is limited as to its location because of the * * * topography, grade or accessibility."

[and]

> "(c). Grant a permit where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any of the provisions of the * * * [zoning ordinance]."

Section 36 (b) and (c), *supra,* also provide that the Board shall act as a fact-finding body and, in arriving at a decision, shall give consideration to the rules, regulations, restrictions, guides and standards set forth elsewhere in the ordinance.

Ordinarily, there is a marked distinction in the law of zoning between a *variance* and an *exception,*[5] but there is none in Baltimore City since an *exception,* apparently, overlaps a *variance* inasmuch as both may be granted where there are "practical difficulties or unnecessary hardships". This is the reason why many cases which arise in Baltimore City, such as this one, discuss exceptions and variances without differentiation.

Basically, of course, all zoning regulation, including rezoning, as well as an exception and a variance, which are intended to relieve the harshness of a zonal restriction in a particular instance, is a lawful exercise of its police power by the sovereign state. It is axiomatic that the individual right to use privately owned property is subordinate to the paramount right of the public whenever such use tends to affect injuriously the health, comfort, safety and general welfare of all persons in a community, provided, however, that such zonal restriction is itself lawful and not such as to permanently deprive the property owner of all reasonable use of his property. See *Grant v. Mayor and City Council of Baltimore* (1957), 212 Md. 301, 315, 129 A. 2d 363; and *Walker v. Talbot County* (1955), 208 Md. 72, 87, 116 A. 2d 393, and the cases therein cited; and *City of Baltimore v. Cohn* (1954), 204 Md. 523, 105 A. 2d 482.

As a general rule, exceptions are granted sparingly, and under exceptional circumstances. To do otherwise would decimate zonal restrictions and eventually destroy all zoning regulations, and thus detrimentally affect the marketability of property within zoned areas. On the other hand, the existence of an unnecessary hardship usually justifies the grant-

---

5. See *Montgomery County v. Merlands Club* (1953), 202 Md. 279, 288, 96 A. 2d 261; *Reed v. Board* (1931), 255 N. Y. 126, 174 N. E. 301, 303; *Devereux Foundation, Inc., Zoning Case* (1945), 351 Pa. 478, 41 A. 2d 744.

ing of an exception. The criterion for determining unnecessary hardship is whether the applicable zoning restriction when applied to the property in the setting of its environment is so unreasonable as to constitute an arbitrary and capricious interference with the basic right of private ownership. As was stated in *Carney v. City of Baltimore* (1952), 201 Md. 130, 137, 93 A. 2d 74, 76-77:

> "The need sufficient to justify an exception must be substantial and urgent and not merely for the convenience of the applicant, inasmuch as the aim of the ordinance is to prevent exceptions as far as possible, and a liberal construction allowing exceptions for reasons that are not substantial and urgent would have the tendency to cause discrimination and eventually destroy the usefulness of the ordinance. * * *
>
> "The expression 'practical difficulties or unnecessary hardships' means difficulties or hardships which are peculiar to the situation of the applicant for the permit and are not necessary to carry out the spirit of the ordinance and which are of such a degree of severity that their existence amounts to a substantial and unnecessary injustice to the applicant."

We think that the primary question we must decide on this appeal is whether the Marinos met the burden of proving that they were entitled to an *exception* under Section 36 (b) and (c), *supra,* of the ordinance. See *Easter v. Mayor & City Council of Baltimore* (1950), 195 Md. 395, 73 A. 2d 491; *Gleason v. Keswick Impvt. Ass'n* (1951), 197 Md. 46, 78 A. 2d 164; *Serio v. Mayor and City Council of Baltimore* (1956), 208 Md. 545, 119 A. 2d 387. Although the Marinos based their application for an exception in part under Section 36 (b), *supra,* on the claim that their property was *peculiar* in that its topography as well as the grade between it and the adjacent land to the north rendered it impossible to construct dwellings thereon, the testimony as to such peculiarities was so meager that it was not unreasonable for the Board and the trial court to have concluded that the

property was not unique and therefore was not such as to justify an exception for those reasons. With respect to meeting the required burden under Section 36 (c), *supra,* it was incumbent upon the Marinos to have shown (i) that if they complied with the ordinance they would not be able to secure a reasonable return from, or to make any reasonable use of, their property, (ii) that the difficulties or hardships were peculiar to the property in question in contrast with those of other property owners in the same district, and (iii) that the hardship was not the result of the applicants' own actions.

Mere financial hardship or an opportunity to get an increased return from the property is not sufficient reason for granting an exception. *Easter v. Mayor & City Council of Baltimore, supra.* However, financial advantage, although not controlling, is not entirely irrelevant. *Serio v. Mayor and City Council of Baltimore, supra.* Obviously, if unnecessary hardships referred only to economic disadvantage, an exception might always have to be granted as a matter of course. *Ellicott v. Mayor and City Council of Baltimore* (1942), 180 Md. 176, 23 A. 2d 649; *Gleason v. Keswick Impvt. Ass'n, supra; Kracke v. Weinberg* (1951), 197 Md. 339, 79 A. 2d 387; *Serio v. Mayor and City Council of Baltimore, supra.* Thus, an analysis of zoning cases demonstrates that the differences between a situation in which the applicant complains that he could secure a greater return from his property if granted an exception and a situation in which the applicant contends that it is impossible to secure a reasonable return from or to make a reasonable use of such property is one of degree rather than kind. In the first instance, his application would invariably be refused. But, in the second instance, if other conditions were met, an exception would likely be allowed. On the whole, this Court, as well as those in other jurisdictions, applies the same rules, but the decisions inevitably depend on the facts of each case.[6]

6. Some of the leading cases in other jurisdictions on this issue in which *variance* was granted include: *Nagaven Realties v. Banzhaf* (1933), 149 Misc. 361, 267 N. Y. S. 729; *People ex rel. St. Albans-Springfield Corp. v. Connell* (1931), 257 N. Y. 73, 177 N. E. 313;

The plight of the owner must be due to unique circumstances and not to general conditions in the neighborhood. The rule was accurately and succinctly stated by Judge Henderson in *Easter v. Mayor & City Council of Baltimore, supra,* when he said at page 400: "* * * it must be shown that the hardship affects the particular premises and is not common to other property in the neighborhood." Thus, it is clear that the Board, in refusing to grant the Marinos an exception, applied the correct principle of law when it said:

"It is the Board's understanding * * * that in order to make an exception to the use regulations, so as to permit a commercial use in the residential zone, evidence must be produced to show that the practical difficulties and unnecessary hardships involved in the use of the land in question or in the making of improvements on such land must be peculiar to the property in question and the difficulties or hardships must not be such as prevail generally with respect to the use of other similarly situated areas * * *."

While it is true that the Marinos did not purchase the property in question with the thought in mind of applying for an exception—actually they purchased it some years before they petitioned for an exception—they knew, of course,

*Schaible v. Board of Adjustment* (1946), 134 N. J. L. 473, 49 A. 2d 50. Cases in which *variance* was refused include: *Fleming v. Board of Adjustment* (1935), 318 Pa. 582, 178 A. 813; *Stevens v. Clarke* (1926), 216 App. Div. 351, 215 N. Y. S. 190; *4672 Broadway Corp. v. Board of Standards and Appeals* (1928), 225 App. Div. 97, 232 N. Y. S. 266, aff'd (1929), 250 N. Y. 571, 166 N. E. 328; *Joyce v. Dobson* (1938), 255 App. Div. 348, 8 N. Y. S. 2d 768; *Hickox v. Griffin* (1949), 298 N. Y. 365, 83 N. E. 2d 836; *Otto v. Steinhilber* (1939), 282 N. Y. 71, 24 N. E. 2d 851; *Colorado Springs v. Miller* (1934), 95 Colo. 337, 36 P. 2d 161; *Levy v. Board of Standards and Appeals* (1935), 267 N. Y. 347, 196 N. E. 284; *YWHA v. Board of Standards and Appeals* (1935), 266 N. Y. 270, 194 N. E. 751; *Jenney Mfg. Co. v. Zoning Board of Review* (1939), 63 R. I. 477, 9 A. 2d 705; *Ricci v. Zoning Board of Review* (1946), 72 R. I. 58, 47 A. 2d 923.

that it was restricted to residential use when they purchased it. More to the point, however, it is a fact that a prior application by them, which was granted, for a commercial use of a part of the property, is without doubt one of the reasons why the remainder is less adaptable now for residential use purposes. Certainly a prior exception granted by the Board does not control the granting of a subsequent exception. *Easter v. Mayor & City Council of Baltimore, supra,* p. 400.

The Marinos contend that there is no legal principle which requires that the difficulties and hardships referred to in Section 36 (c), *supra,* must be peculiar to their property and not applicable to ·other property in the same zoning district, citing *N. W. Merchants Term. v. O'Rourke* (1948), 191 Md. 171, 60 A. 2d 743; *Hoffman v. Mayor & City Council of Baltimore* (1951), 197 Md. 294, 79 A. 2d 367; and *City of Baltimore v. Cohn, supra.* They also insist that the Board abused its discretion in denying an exception on the assumption that the evidence showed that their property was wholly unsuitable for residential use, relying principally, on the *Terminal, Hoffman* and *Cohn* cases, *supra,* to support this contention. Obviously, their interpretation of the Board's finding was erroneous, and the Marinos' contention that it is impossible to use their property for the purposes to which it is restricted by the ordinance is a debatable question. In the *Terminal* case, in which we applied the presumption of reasonableness to the facts in that particular case, we declared that the rezoning ordinance was invalid because it was unreasonable, arbitrary and contrary to Section 3 of Article 66B of the Code (1951). Likewise in the *Hoffman* case we held that it was unnecessary to consider the "exceptions" as such because we could and did determine the ordinance to be *pro tanto* invalid on the facts of that case. And in the *Cohn* case, again on the particular facts there present, we held that a particular application of a zoning ordinance may be held invalid when it restricts property to uses for which the property was not adapted. We did not consider the question of the existence of practical difficulties or unnecessary hardships in any of those cases. Instead we reaffirmed the established constitutional doctrine "that a zoning ordinance which per-

manently so restricts the use of property that it cannot be used for any reasonable purpose goes beyond permissible regulation, and must be regarded as a taking of property without compensation." *City of Baltimore v. Cohn, supra,* p. 530. As previously indicated the facts in the *Terminal, Hoffman* and *Cohn* cases were vastly different from the facts here. In the case at bar, there are insufficient facts to show indisputably that the residential use ordinance so restricts the use of their property that it cannot be used for any reasonable purpose. Nor are we persuaded that the Board abused its discretion in denying the Marinos' application for an exception for the reason that their property was unsuitable for residential use. In fact, we believe it is fairly debatable under the testimony in this case whether the owners are able to secure a reasonable return from, or to make any reasonable use of their property, of which more presently. Furthermore we do not believe that it was necessary for the Board to make a specific finding that the Marino property was suitable for residential use. Instead we think that such a finding was implicit in their sole finding that there were no practical difficulties or unnecessary hardships peculiar to the property in question.

There is yet another aspect of this case which is an important factor, although not necessarily controlling. We have recognized repeatedly that traffic congestion is an element which the Board should consider when deciding whether to grant a variance. *Hardesty v. Board of Zoning Appeals* (1956), 211 Md. 172, 126 A. 2d 621; *Temmink v. Board of Zoning Appeals* (1957), 212 Md. 6, 128 A. 2d 256; *Price v. Cohen* (1957), 213 Md. 457, 132 A. 2d 125. In fact, the enabling act [Code (1951), Art. 66B, sec. 3], specifically provides, *inter alia,* that zoning regulations shall be made in accordance with a comprehensive plan and "designed to lessen congestion in the streets". The testimony before the Board on the question of traffic congestion was not extensive, but the weight of what there was is to the effect that at certain hours it is next to impossible to get through the Belvedere Avenue-York Road intersection except at a very slow pace. The testimony of the traffic director in court was to the same

effect in that he testified that this intersection was considered to be among the heaviest traveled corners in the city. His opinion was based on the result of several traffic surveys of the area. It was also his opinion that the proposed commercialization of the whole of the Marino property would not help the situation. The Board did not assign the traffic problem as a reason for declining the exception but the trial court did. Such consideration was proper. It is apparent from the testimony of the traffic director, the only traffic expert who testified, that the layout of the streets in the area is not such as would permit a solution of the problem. And there was no evidence that a relocation of the streets was contemplated in the near future. We think it is clear that to grant the exception sought would tend to increase congestion in the streets, not to lessen it, as the clear mandate of the enabling act contemplates. *Hardesty v. Board of Zoning Appeals, supra; Temmink v. Board of Zoning Appeals, supra.*

We believe that the question whether to grant or deny an exception under the evidence in this case was fairly debatable. This being so, the order of the trial court must be affirmed. A court may not substitute its judgment as to the wisdom or soundness of the action taken by an administrative body unless it is clear that such action was illegal, arbitrary or discriminatory. *Serio v. Mayor and City Council of Baltimore, supra.*

Since the Board has broad discretionary powers which a court cannot set aside without sound legal reasons, we are not persuaded that either the Board or the trial court erred in refusing to grant the Marinos an exception to the residential use restriction to which their property is presently subject. If it is a fact that the character of the neighborhood is gradually changing as a result of additional commercial uses from time to time, then the City Council might well extend the adjacent first commercial district to include the whole of the Marino property, but that is a legislative, not a judicial function. See *Miller v. Silver* (1951), 278 App. Div. 962, 105 N. Y. S. 2d 474, in which it was said:

> "* * * where a claimed hardship is *common* to other properties in the area and not one special and

peculiar to the specific property, the remedy is by change in the *zoning ordinance* itself." (Italics supplied.)

There is one remaining objection which requires a brief comment. We think that the admission in evidence of the agreement between the Marinos and certain neighborhood interests concerning the use of the property in question was at the most no more than a harmless error. All that it shows is that the Marinos had a different concept in 1946 as to the use of the property than they had in 1956 when they applied for another exception. Clearly the agreement had no evidentiary value bearing on the finding made by the Board and the question the trial court decided, which we are about to affirm. There is nothing in the record to indicate that the agreement was prejudicial or in any way influenced either the action of the Board or the decision of the trial court.

*Order affirmed, the appellants
to pay the costs.*